IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KAREN R.,[1]

      Plaintiff,

v.                                                                Civ. No. 24-1227 SCY

FRANK BISIGNANO,
Commissioner of
Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff argues that the Commissioner committed error when denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. As Plaintiff points out, the ALJ erred in finding that Plaintiff's migraines had been resolved with treatment. Because evidence that Plaintiff continued to have frequent migraines, even after treatment, could have affected her ability to work, this error was not harmless. As a result, the Court GRANTS Plaintiff's Motion For Judgment On The Pleadings (Doc. 13) and remands for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 8, 9, 11. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

  A. <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>     most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.   Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

3

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

On appeal, Plaintiff raises three arguments, all of which have a common theme: the ALJ erred in finding she could work despite the evidence of her migraine headaches. *See* Doc. 13-2 at 2. First, Plaintiff argues the ALJ incorrectly concluded that Plaintiff's migraines resolved with treatment and, consequently, failed to consider the extent to which Plaintiff's ongoing headaches and other pain limited her ability to work. Second, Plaintiff argues that the ALJ should have considered whether her migraines meet a listing or listing equivalent. Third, Plaintiff argues that even though her migraines caused her to be sensitive to light, the RFC the ALJ assessed included no limitation related to her light sensitivity. Because the Court agrees with Plaintiff's first argument, it does not reach the other two arguments.

    A.    Duty to Consider All Evidence

"The regulations require the ALJ to consider all evidence in the case record when he makes a determination or decision whether claimant is disabled." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (citing 20 C.F.R. § 404.1520(a)(3)) (internal quotation marks and alterations omitted). That is, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). And "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (in determining whether substantial evidence existed, the court cannot reweigh the evidence or substitute its judgment for the ALJ's).

Nonetheless, the ALJ cannot ignore relevant evidence or mischaracterize the evidence. "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly

probative evidence he rejects." *Clifton*, 79 F.3d at 1010; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician); *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence").

  B. <u>Background</u>

  In her decision, the ALJ found that Plaintiff's severe impairments included "migraine headaches." AR 206. The ALJ did not evaluate any listings relevant to migraines. AR 207-09. The ALJ assigned an RFC for sedentary work with no mental functioning limitations, but she did include a limitation to a "moderate noise environment." AR 209-10. In discussing the subjective symptom evidence, the ALJ noted that Plaintiff applied for benefits "alleging that symptoms stemming from her . . . migraine headaches have prevented her from working." AR 210. The ALJ noted that Plaintiff testified at the hearing that "[s]he further reported that she could no longer work due to migraine headaches that occur about 15 times a month and last 4-6 hours after she takes her medication." AR 210. The ALJ then analyzed the medical evidence pertaining to Plaintiff's migraines as follows:

> Though the claimant reported migraine headache pain, the record indicates her symptoms resolved with treatment. The record reflects that the claimant sought treatment for migraine headaches accompanied b[y] sensitivity to noise, noting her headaches last for about 4-6 hours. (Ex. 9F; Testimony). The claimant reported that she had been taking medication (Cymbalta, Diclofenac, Fioricet, and Sumatriptan) and receiving Botox injection[s], though she reported her medication had little effect. (Ex. 9F/12 [AR 1628]; 15F/18 [AR 1928]; 19F/20 [AR 2236]). However, physical examinations were generally normal, and she presented with benign neurological examination with no focal deficits and normal

>coordination/motor skills. (Ex. 1F/39 [AR 562], 47 [AR 570]; 3F/55 [AR 934], 173 [AR 1052], 185 [AR 1064]; 6F/46 [AR 1294]; 9F/9 [AR 1625]; 15F/52 [AR 1962]; 16F [AR 2029-2124]; 19F/9 [AR 2225]). As such, the claimant's condition is not as limiting as asserted and would not preclude work, so long as it does not involve an environment with more than moderate noise level, as defined in the DOT and SCO as detailed in the RFC.
>
>Ultimately, the claimant's impairments would not preclude her from performing work-related activities. The record generally reflects that the claimant is able to function and perform activities of daily living independently, which suggests a much higher level of functioning than purported. (Ex. 6E; Testimony). Despite her experiences with [other impairments and] migraine headaches, the claimant was still able to perform her activities of daily living, including performing her household chores, preparing meals, shopping in stores, managing her hygiene, managing her finances, watching tv, playing games on the internet, navigating the internet, and using a phone. (Ex. 6E; Testimony). Accordingly, the claimant's symptoms do not completely prevent her from performing work-related activities.

AR 210-211.

On appeal, Plaintiff outlines her history with migraines which the ALJ did not discuss. As relevant to chronic migraines, Plaintiff cites:

- 4/13/2021 rheumatology consultation notes reflecting a review of systems that is positive for headaches (AR 1597-98);

- 6/3/2022 and 9/16/2022 progress notes from her neurologist reflecting that Plaintiff experiences "chronic migraines," including more than 15 migraines per month, which were described as occurring in the frontal occipital, throbbing and aching in quality, and associated with photophobia, exertion and nausea (AR 1628, 1894);

- 6/20/2023 and 7/18/2023 progress notes from Lovelace-UNM Pain Clinic reflecting that Plaintiff "continues with ongoing overall diffuse body pain including upper neck pain, mild back pain, low back pain" and "ongoing migraine headaches" (AR 2231, 2245).

Doc. 13-2 at 12-13.

C. Discussion

As noted, to resolve the present motion the Court need only address Plaintiff's first argument: whether the ALJ committed harmful error in assessing an RFC based on the incorrect conclusion that Plaintiff's migraine headaches were "resolved with treatment." It is true, as the

Commissioner notes, that Plaintiff experienced "some" symptom relief with treatment, even if her migraines were not fully resolved. The Commissioner also argues that Plaintiff's physical examination results did not provide objective evidence of migraines, and that Plaintiff had the ability to perform some activities of daily living, including work below substantial gainful activity levels during the relevant period. Nonetheless, because a reasonable factfinder who correctly concluded that Plaintiff's migraines had not fully resolved with treatment could find that she was not able to work in her prior employment, as set forth more fully below, the ALJ's error was not harmless.

        1.      <u>Treatment of migraines</u>

Plaintiff challenges the ALJ's statement that the Plaintiff's migraines were resolved with treatment. Doc. 13-2 at 14 (citing AR 212). As Plaintiff points out, this conclusion contradicts Plaintiff's hearing testimony that, despite treatment, including Botox, Plaintiff still experienced at least 10 migraines per month. *Id.* (citing AR 54-55). The ALJ did not discuss this testimony or cite any evidence in support of her conclusion that Plaintiff's migraines were resolved with treatment. The ALJ's statement that "the record indicates [Plaintiff's] symptoms resolved with treatment" is not preceded or followed by a discussion of any records that support the statement. AR 212. Instead, it is immediately followed by a statement which contradicts it: "The claimant . . . reported her medication had little effect." *Id.*

The Commissioner defends the decision, arguing that the ALJ was permitted to rely on the evidence in the record showing that Plaintiff "admitted medication and other treatment provided some symptom relief," even if "treatment did not fully resolve her symptoms." Doc. 17 at 7-8 (citing AR 53, Botox helped headaches; AR 810, massage provided some relief; AR 943, pain medication provided some relief; AR 1250, 1573, medication took the "edge" off pain; AR 1928, Botox reduced headaches by more than 50%). The Commissioner's argument fails for two

8

reasons. First, the ALJ did not conclude that treatment provided "some relief" for migraines. Although the Commissioner only goes so far as to say medication and other treatment *helped*, the ALJ took that farther and declared that treatment *resolved* the symptoms. Neither the ALJ nor the Commissioner cite any evidence that Plaintiff's migraines were "resolved" with treatment.

Second, the ALJ did not cite or discuss the evidence the Commissioner cites in support of the Commissioner's assertion that treatment reduced the symptoms. For example, the Commissioner cites AR 53, which is Plaintiff's hearing testimony that Botox reduced her migraines from an every-day occurrence down to 10 days a month. *See* AR 53-55.[4] Although the ALJ is required only to *consider* all the evidence and is not required to *discuss* everything in the record, the ALJ's own analysis makes it clear the ALJ did not consider the records the Commissioner cites. That is, the ALJ's description of Plaintiff's hearing testimony does not acknowledge Plaintiff's statement about Botox reducing her migraines. To the contrary, the ALJ's sole reference to Botox injections was to note that "[t]he claimant reported that she had been . . . receiving Botox injection[s], though she reported her medication had little effect." AR 212. As noted above, the ALJ's acknowledgement that the medication "had little effect" does not support—and indeed contradicts—her own conclusion that Plaintiff's migraine symptoms "resolved" with treatment. It also demonstrates that, unlike the Commissioner on appeal, the ALJ did not rely on the notion that medications "helped" Plaintiff's symptoms.

The Court thus concludes that the ALJ erred in stating, without record support, that Plaintiff's migraines were resolved with treatment. The Court rejects the Commissioner's

---

[4] The Court notes that the statement the Commissioner cites on AR 1928—that Botox reduced Plaintiff's headache frequency by over 50%—is consistent with a decrease from 30 or 31 times a month to 10 times a month. It therefore does not conflict with Plaintiff's subjective symptom testimony.

arguments because the ALJ did not articulate similar reasoning below. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

### 2.  Physical examination findings

The Commissioner next emphasizes that the ALJ gave other reasons for discounting Plaintiff's complaints of limiting pain from migraines. In the relevant paragraph, the ALJ continued her analysis by stating that "normal findings on examination undermined Plaintiff's claim of disabling symptoms." Doc. 17 at 5-6; AR 212 ("[P]hysical examinations were generally normal, and she presented with benign neurological examination with no focal deficits and normal coordination/motor skills.").

The Court disagrees that this is a valid reason for discounting Plaintiff's migraine evidence. Despite the use of the word "neurological" in this sentence, the ALJ's string citation referenced solely physical examination notes, rather than any notes from Plaintiff's neurologist. AR 212 (citing AR 562, 570, 934, 1052, 1064, 1294, 1624-25, 1962, 2224-25).[5] Physical exams do not reflect chronic migraines or the lack thereof. *See Taylor S. v. Kijakazi*, No. 21cv2, 2022 WL 670155, at *12 (W.D. Va. Mar. 7, 2022) ("'There are some conditions, such as migraine headaches, that cannot be diagnosed through laboratory or diagnostic testing,' and thus a lack of findings on physical exam would not necessarily reflect an absence of these conditions or a lesser degree of the severity of them." (quoting *Duncan v. Astrue*, No. 06cv230, 2008 WL 111158, at *6 (E.D.N.C. Jan. 8, 2008) (internal alterations omitted))).

---

[5] The ALJ also cited to the entire exhibit of 16F, a 95-page document of treatment notes from family medical practitioner Dennis Hurtado, MD. AR 2029-2124. Because the ALJ did not give a pincite, the Court cannot determine the portion of this record on which the ALJ relied. The exhibit in question, however, appears to lack notes or opinions from a neurologist.

The ALJ erred in relying on physical examination findings, exclusive of neurological evidence, to discount evidence of Plaintiff's chronic migraines.

### 3. Activities of daily living

The Commissioner asserts that "Plaintiff's admitted abilities contradicted her claims of disabling symptoms." Doc. 17 at 6. "The ALJ emphasized that despite Plaintiff's complaints of pain, weakness, and fatigue, she was nevertheless able to perform work in 2020, 2021, and 2022, albeit below substantial gainful activity levels." *Id.* "Additionally, the ALJ explained that Plaintiff admitted she was able to do chores, make meals, shop in stores, manage her personal care and finances, use her phone, and play games on the internet." *Id.* at 7.

The Court agrees that evidence of Plaintiff's activities is relevant to her claims of disabling limitations. However, the Court has found that the ALJ erred in stating that Plaintiff's migraines were resolved with treatment and that normal physical examination findings undermined Plaintiff's complaints of migraines. Therefore, the Commissioner's argument that the ALJ gave other good reasons for her analysis must be treated as a harmless error argument. Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Here, harmless error would apply if no reasonable factfinder could find disability given the evidence of Plaintiff's activities. Plaintiff does not argue that she had migraines every day such that she could never work or never perform activities of daily living. Instead, she asserts that the prevalence of her migraines would cause excessive absenteeism and limit her ability to concentrate and stay on task. Doc. 13-2 at 14-15. A reasonable factfinder could find that the part-time work and sporadic activities of daily living do not demonstrate that a person who has undergone years of treatment for chronic migraines and continues to experience 10 migraines a

month has the ability to work as a data research analyst— a skilled position with increased requirements for complex thinking. Doc. 13-2 at 16 (citing AR 214 and POMS DI 25020.010(B)(4)(b)). In other words, as Plaintiff argues, accepting her evidence related to chronic migraines would result in an altered RFC that included mental functioning limitations related to concentration, persistence, and pace. Doc. 13-2 at 14-15. Accordingly, the Court cannot affirm under the doctrine of harmless error.

### 4. Plaintiff's remaining arguments

In her opening brief, Plaintiff also argues that the ALJ should have considered whether her migraine headaches establish a medical equivalence of a listed condition (Doc. 13-2 at 17-22); and argues that the ALJ's limitation related to noise reduction, unaccompanied by a restriction for Plaintiff's light sensitivity, is inexplicable and unsupported (*id.* at 22-24).

With respect to whether Plaintiff had a listed condition, the Commissioner argues in part that Plaintiff did not adequately present this condition to the ALJ for a listing determination. Doc. 17 at 11. The Court need not resolve this dispute. Because the Court is remanding for other reasons, on rehearing the ALJ will be aware of Plaintiff's argument that her condition meets a listing or equivalent, and waiver doctrines will not be relevant. In addition, if—as the Commissioner says (Doc. 17 at 13-14)—this argument would require developing the record, the ALJ is free to consider whether to do so on remand.

Likewise, the Court does not address Plaintiff's argument that her RFC should include a light-sensitivity limitation because on remand the RFC is likely to be altered by the instructions in this decision. *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## CONCLUSION

For the reasons stated above, Plaintiff's Motion For Judgment On The Pleadings (Doc. 13) is **GRANTED**. The case is remanded for further proceedings in accordance with this decision.

                                                **STEVEN C. YARBROUGH**
                                                **United States Magistrate Judge**
                                                **Presiding by Consent**